STATE, Plaintiff, V. KRUMME, Defendant.

*No. State 5. Argued February 7, 1969.—Decided March 4, 1969.*
(Also reported in 165 N. W. 2d 148.)

For the plaintiff there was a brief and oral argument by *Rudolph P. Regez* of Monroe, counsel for the State Board of Bar Commissioners.

For the defendant there was a brief and oral argument by *Stewart G. Honeck* of Milwaukee.

PER CURIAM. The complaint of the plaintiff alleges in substance that the defendant, an attorney, commingled trust funds with his own,[1] withheld payment of distributive shares to the heirs for an unreasonable length of time, misrepresented the degree of difficulty of the services performed, charged an exorbitant fee for such services, offered to split his fee with the attorney for the administratrix of the estate, and did not carry out the suggestions made by an attorney of the District Four Grievance Committee of the State Bar after agreeing that he would.

[1] Sec. 256.293, Stats.

The factual allegations of the complaint are supported by the great weight and clear preponderance of the evidence. The defendant admitted most of the allegations of the complaint and has commendably cooperated with the State Board of Bar Commissioners in this proceeding.

The Honorable EDWARD G. MINOR, whom we appointed referee, concluded that the defendant's conduct warranted discipline and made the following recommendation:

"I therefore recommend that the defendant be punished by a reprimand, payment of interest upon the legacies and any other amount that may be due to the heirs allowing a total fee for his services and disbursements of $678.00, and in addition thereto that the defendant be required to pay the costs and disbursements of these disciplinary proceedings."

The defendant requests that the referee's recommendation be followed by this court. The plaintiff has moved this court to adopt the referee's findings, but has taken exception to the leniency of the referee's recommendation and asks this court to determine such discipline as is consistent with the referee's findings.

Mr. Krumme is a naturalized citizen; born in Germany, he immigrated to the United States in 1928. He was admitted to the Wisconsin Bar in 1948, after attending Marquette Law School and passing the Wisconsin Bar examination. He is married and the father of two children, a daughter twenty-six and a son twenty-two years of age.

The defendant is a member of the State Bar of Wisconsin, a resident of Hartland, Wisconsin, and practices law in Milwaukee. He has been a sole practitioner since his admission to the Wisconsin Bar.

The facts upon which this action is based arose out of the estate of Frieda Mack, a resident of Shawano county,

Wisconsin, who died intestate on October 7, 1964. The estate was probated in Shawano county.

The defendant represented five heirs who were residents of East Germany; this action is predicated upon his representation of those heirs.

The five heirs were notified of the administration proceedings and retained an East Germany attorney, Frau Ingeburg Gentz. In an attempt to comply with sec. 310.05 (2), Stats., Mr. Douglas Winter, the Shawano attorney representing the administratrix, notified the West German Consulate in Chicago of the interest of the East German heirs. The consulate retained Mr. Krumme to represent it, and he filed a notice of retainer in the county court. It later developed that the consulate had no interest in the estate and at its request the defendant withdrew the notice of retainer.

Mr. Winter also notified the Wisconsin attorney general's office. This office initially took the position that because of local conditions in East Germany there was no reasonable assurance that the heirs would actually receive their distributive shares and that, therefore, some depository arrangements should be made. The office of the attorney general maintained this position until shortly before the estate was closed. It appears that this was a significant factor in producing some correspondence between Mr. Winter and the East German heirs concerning the retention of United States counsel. A letter from one of the heirs suggests that someone in Germany had recommended Mr. Krumme.

In December, 1965, the defendant had a conference with Mr. Winter in Shawano. Mr. Krumme discussed his proposed fee of 30 percent of the distributive shares. Mr. Winter registered his opinion that it was too high, but the defendant told Mr. Winter of the complexities of the situation, the possibility of trips to Germany, and of his specialized knowledge in these matters. Mr. Krumme also stated that he would "not be unwilling" to

split the fee with Mr. Winter. Mr. Winter declined to participate in any such arrangement.

In early 1966, the East German heirs executed powers of attorney to the defendant, and Frau Gentz forwarded them to him.

In March, 1966, the final account in the estate was heard and on April 26, 1966, a check in the amount of $9,815.24 (including an overpayment of $161.79 which was refunded) was mailed to Mr. Krumme for distribution to the heirs.

As it finally developed, the only services Mr. Krumme was required to render on behalf of the heirs was to enter his appearance, receive the check representing their inheritance and distribute it to the heirs.

The defendant deposited the check in his trust account and, by his own admission, commingled the heirs' funds with his own. At one time, the balance in the account was less than $50. However, the defendant has submitted statements of his assets reflecting them to be in excess of $100,000, and he now takes the position that the funds of the heirs were therefore actually never in jeopardy.

In May, 1967, the East German heirs were still without their inheritance. Frau Gentz reported this to the German Consulate in Chicago, which in turn sought payment from the defendant. He promised payment by a certain date. It was not forthcoming, so the consulate reported it to the office of the Milwaukee county district attorney. An assistant district attorney contacted Mr. Krumme, and on May 3, 1967, he remitted $6,763.42 to the heirs, retaining $2,890.03 as his fees and disbursements. At about the same time the defendant deposited $7,000 in his trust account.

Subsequently, a complaint against the defendant was filed with the District Four Grievance Committee of the State Bar. The complaint was referred to attorney James Stern of Milwaukee for investigation.

Among other things, Mr. Stern and Mr. Krumme discussed the propriety of Mr. Krumme's fees. Mr. Krumme

indicated that he did not think that the amount of his fee was terribly relevant because the heirs lived in a Communist-occupied country and would probably receive none of the money. Mr. Stern disagreed with the defendant in respect to the propriety of his position on his fees and discussed with him the possibility that he re-evaluate the fee without reference to what might eventually happen to the remittance.

We commend Mr. Stern for his professional approach to the matter of determining attorney's fee. We deem it to be most inappropriate and unprofessional to determine a fee for legal services upon the ultimate disposition of the proceeds of litigation. Such an approach to the determination of an attorney's fee is repugnant to the high calling of the legal profession. An attorney's fee should represent reasonable compensation for the services performed. Mr. Stern was of the opinion that he and the defendant had agreed that a fee of $678 would be appropriate. Such a fee would result in a further payment to the heirs in the amount of $2,212.03. At the request of the defendant, Mr. Stern prepared a draft of a letter for him to send to Frau Gentz explaining the remittance and referring to the enclosure of a draft for $2,212.03.

The conference between Mr. Stern and Mr. Krumme occurred in June, 1967, and Mr. Stern thereafter made a report to the Grievance Committee. In August of 1967, Mr. Krumme remitted $2,000 to Frau Gentz.

Mr. Krumme has been guilty of gross professional misconduct warranting discipline.

However, in these proceedings the defendant has readily admitted that he committed the acts set forth in the complaint. He was absolutely honest in answering all of the questions put to him by the attorney for the Bar Commissioners. He directed his attorney to cooperate with the attorney for the Bar Commissioners. This attitude of cooperativeness has been acknowledged. The

defendant admitted that he commingled trust funds, that the charge made for his services was exorbitant, that he withheld payment to the heirs for an unreasonable length of time, and that he suggested splitting fees with Mr. Winter.

The record indicates that some medical problems of his wife were causing him difficulties although he chose not to use this as an excuse. This is the only matter on the part of the defendant brought to the attention of the State Bar during his years of practice except one of a minor nature some years ago which was dismissed. The record also reflects the sincerity, honesty and contriteness of the defendant and his full realization of the unprofessional manner of his conduct in this case.

Two respected members of the judiciary, each with long years of outstanding service, testified as to the good conduct and honesty of the defendant. Two esteemed retired members of the judiciary testified likewise, as did a past president of the Milwaukee Bar Association and the State Bar of Wisconsin. The record also contains letters from other respected members of the judiciary and the bar attesting to the good character of the defendant.

The factors to be considered in imposing discipline have recently been summarized in *State v. Roggensack:* [2]

"This question should be considered with the goal of protecting the public in mind. See *State v. Barto* (1930), 202 Wis. 329, 345, 232 N. W. 553. Punishment of an offending attorney is not the objective of disciplinary proceedings. *State v. Kern* (1930), 203 Wis. 178, 181, 233 N. W. 629. Primary consideration should be given to the question of whether there is a likelihood, if any discipline is imposed short of suspension or disbarment, of the attorney's engaging in unprofessional conduct in the future. *State v. Markey* (1951), 259 Wis. 527, 542, 49 N. W. (2d) 437; *State v. McCarthy, supra,* at page 250; and *State v. Kern, supra,* at page 183. . . ."

---

[2] (1963), 19 Wis. 2d 38, 46, 119 N. W. 2d 412.

Upon consideration of all the circumstances, we deem a reprimand and the imposition of certain monetary assessments sufficient discipline in this instance.

It is ordered and adjudged that the defendant be and he is hereby reprimanded for his unprofessional conduct and that he pay the heirs the remaining portion of the legacy due them plus interest on all the unremitted legacies from April 26, 1966, to the date of payment, less a fee for his services and disbursements in the amount of $678. The costs of these proceedings are taxed and charged to the defendant in accordance with the provisions of sec. 256.28 (14), Stats.