Janice DYSON, Plaintiff-Appellant,

v.

A. Henry HEMPE, Charles A. Holznecht, and
George Blakely, Defendants-Respondents.†

Court of Appeals

*No. 85–1933. Argued February 25, 1987.—Decided July 23, 1987.*

(Also reported in 413 N.W.2d 379.)

† Petition to review denied.

For the plaintiff-appellant there were briefs by *John H. Correll* of Milwaukee, and *Thomas M. Croke* of counsel, of Milwaukee, and oral argument by *John H. Correll.*

For the defendant-respondent there was a brief by *Robert J. Ruth* and *Bolgrien, Ruth & Rentz, S.C.,* of Beloit, and oral argument by *Robert J. Ruth.*

Before Gartzke, P.J., Eich and Sundby, JJ.

SUNDBY, J.   Janice Dyson appeals judgments dismissing her legal malpractice action pursuant to sec. 804.12(2)(a)3, Stats., with prejudice and costs, as a sanction for failing to make discovery. She brought this action against three attorneys who represented her in her divorce action at different times. At defendants' oral examination of Dyson pursuant to sec. 804.05, she failed to produce requested documents and refused to answer a number of questions, asserting several privileges, including a lawyer-client privilege under sec. 905.03, Stats.[1]

---

[1]Section 905.03, Stats., defines the scope of the lawyer-client privilege in relevant part as follows:

(1)   As used in this section:

Upon defendants' motion, the court ordered Dyson to answer questions she had refused to answer and all reasonable follow-up questions and to "forthwith" provide each defense counsel with a complete copy of her entire divorce file, and to file the original with the court. The order found that,

> 3. There is no attorney/client privilege which plaintiff, Janice Dyson, may claim in this case with respect to the following:
>
> A. Any conversations between plaintiff, Janice Dyson, and any attorney relating to any topic or subject which plaintiff, Janice Dyson, claims to constitute negligence in this case, including without limitation the subject of maintenance; or

(a) A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him.

(b) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

. . . .

(d) A communication is "confidential" if not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

(2) A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: (a) between himself or his representative and his lawyer or his lawyer's representative, or (b) between his lawyer and the lawyer's representative, or (c) by him or his lawyer to a lawyer representing another in a matter of common interest, or (d) between representatives of the client or between the client and a representative of the client, or (e) between lawyers representing the client.

B. Any conversations between plaintiff, Janice Dyson, and any attorney where there was any discussion of any defendant herein or legal services rendered by any defendant herein to plaintiff, Janice Dyson.

The order compelled James E. Welker, an attorney consulted by Dyson about her divorce and the defendants' representation of her, to answer, at his deposition and at trial, all questions relating to his conversations with Dyson about the defendants' representation of Dyson in her divorce action.

Thereafter, the defendants again conducted an oral examination of Dyson. Dyson dropped some of her claims of privilege, including physician-patient privilege and battered women's shelter privilege[2] but did not produce her file. She continued to claim a lawyer-client privilege with respect to a number of the questions she had been ordered to answer.[3]

---

[2]At one time Dyson stayed at a battered women's shelter. She agreed with the shelter not to disclose its location, the identity of other persons at the shelter or the nature of the activity in the shelter. Dyson asked the trial court, and this court, to recognize a privilege protecting this information on public policy considerations. We do not consider Dyson's claim to a battered women's shelter privilege because she answered questions related to the shelter.

[3]Defendant Holznecht's affidavit in support of the motion to dismiss listed the following as the questions Dyson refused to answer:

1. Which other [attorneys] did you consult [about your divorce case]?

2. What criticism do you have of [Defendant] Hempe's representation of you in your divorce?

3. What result are you critical of that [Defendant] Holznecht obtained for you in your case?

The defendants then moved to dismiss Dyson's complaint as a sanction for failing to make discovery.

4. [Other than one reason stated] what was your reason for changing from Atty. Hempe to Atty. Holznecht? [Other than that you were unable to obtain the $450 support provided in the temporary order,] what other criticisms did you have of the temporary order?

5. Did you have any conversation with [Atty. Welker] with respect to custody or maintenance or anything like that? Without telling me what the details of the conversation were, the topic of maintenance came up between you and Atty. Welker, didn't it?

6. [When talking to Atty. Henderson in Beloit about the divorce did the conversation relate to] how your attorney at that time was handling your divorce? Did you ask Mr. Henderson then to review what your divorce attorneys had done up to that point? Isn't it true, Mrs. Dyson, that you gave Atty. Henderson some background of your divorce matter and legal representation that you had prior to discussing anything else with him?

7. How did you arrive at [the $100,000] figure [of damage caused by Defendant Holznecht]? Does that $100,000 consist of certain components?

8. Have you been to a vocational counselor since the divorce has been granted?

9. How much dollar amount are you claiming because there was no educational provision in your judgment?

10. You are suing for $88,000 in legal expenses. Where did you come up with that number? Did you give Mr. Correll [Dyson's present attorney] any figures that add up to $88,000 for legal expenses that you are claiming?

11. Is Mr. Correll working for you on this case on an hourly charge or on some other basis? When Mr. Correll took your case against these three attorneys in this case, did you sign some kind of an agreement whereby you were agreeing to pay him?

12. The $88,000, does that represent legal expenses for somebody other than Mr. Correll, do you know?

13. Part of the conversation that you had with Atty. Welker at that time then included this Blazer problem that you were having, didn't it; and he told you that you didn't have a leg to stand on there, didn't he?

At the hearing, Attorney Welker, upon direction by the court but over the objection of Dyson, testified to communications between himself and Dyson relative to her divorce and the defendants' representation of her. The court concluded that Dyson's communications with other attorneys relative to her divorce and the defendants' representation of her were not privileged lawyer-client communications because they fell within sec. 905.03(4)(c), Stats., which provides that there is no privilege as to a communication relevant to a breach of duty by the lawyer to his client. The court therefore ruled that Dyson, without excuse or justification, had failed to make discovery as ordered and dismissed her complaint with prejudice and costs. Judgments were entered dismissing her action as to each defendant. Dyson claims that the trial court erred in imposing discovery sanctions against her because the questions she refused to answer were subject to a lawyer-client privilege, which she claimed.

## I. STANDARD OF REVIEW

██

We will not reverse the trial court's dismissal of an action for plaintiff's failure to comply with pretrial discovery orders unless the trial court abuses its discretion. *Trispel v. Haefer*, 89 Wis. 2d 725, 731, 279 N.W.2d 242, 245 (1979). Abuse of discretion need not involve an arbitrary or capricious misuse of discretion.

---

14. Did you tell Atty. Welker why you got rid of Atty. Hempe? Didn't you tell Atty. Welker that Hempe would not go along with the agreement that you and your husband had worked out?
15. Isn't it true that you told Atty. Welker that you did not want to have any maintenance after your divorce was granted; you just wanted the divorce?

The trial court abuses its discretion when it bases its decision on an error of law. *Earl v. Gulf & Western Mfg. Co.,* 123 Wis. 2d 200, 205, 366 N.W.2d 160, 163 (Ct. App. 1985). As we explain in part IV of this opinion, the trial court erred when it concluded that sec. 905.03(4)(c), Stats., applied and Dyson could claim no privilege. The court abused its discretion to the extent that it based its decision on this error of law.

## II.  FAILURE TO PROVIDE DIVORCE ACTION FILE

Defendants contend that Dyson's failure to provide them and the court with her divorce file as ordered in itself warrants the sanction of dismissal. She attempted to excuse her failure on the grounds she did not have to provide the defendants with free copies. The trial court in the dismissal order appears to have interpreted the discovery order as requiring Dyson to supply copies of her file without charge. The trial court is the best judge of the meaning of its own order. *See Palmi v. Palmi,* 140 N.W.2d 77, 82 (Minn. 1966) (construction of its own decree must be given great weight in determining intent of trial court).

However, the court's construction of the discovery order was not known to Dyson until the court granted the defendants' motion to dismiss. In any event, we do not consider Dyson's failure to comply with the discovery order in this respect to be egregious. Dismissal for noncompliance with pretrial orders is appropriate only in cases of egregious conduct. *Englewood Apartments Partnership v. Grant & Co.,* 119 Wis. 2d 34, 40, 349 N.W.2d 716, 719 (Ct. App. 1984). "[I]t is well established that a party's simple negligence or other

800

action grounded in misunderstanding of a discovery order does not justify the 'use of the Draconian remedy of dismissal.'" *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) (citation omitted). If Dyson's failure to timely provide the defendants with copies of her file made discovery more time-consuming and expensive, on remand the defendants may move under sec. 804.12(2)(a), Stats., for some sanction other than dismissal, or under sec. 804.12(2)(b) for reasonable expenses, including attorney's fees, caused by Dyson's failure. The trial court may abate action on such motion pending conclusion of the trial.

## III. EXISTENCE OF LAWYER-CLIENT PRIVILEGE

Dyson claimed a lawyer-client privilege with respect to the subject matter of the questions set forth in footnote 3. The trial court concluded that there was no privilege as to any communication between her and any attorney as to the subject matter of these questions because of the exception to the privilege created by sec. 905.03(4)(c), Stats. The defendants contend that there was no privilege for the added reasons that (a) Dyson failed to establish that the communications she sought to protect from disclosure were intended to be confidential; (b) she waived the lawyer-client privilege by voluntary disclosure, sec. 905.11; and (c) she lost the privilege because she sought the services of other attorneys in furtherance of a fraud. Consideration of the nature of the lawyer-client privilege is not necessary to determine these contentions of the defendants. We therefore defer consideration of the privilege and the sec. 905.03(4)(c) exception until we have addressed these contentions.

(a) *Failure to Show Communications Were Intended to Be Confidential.* Defendants contend that Dyson failed to satisfy the court that the communications she sought to protect were intended to be confidential, sec. 905.03(1)(d), Stats.

> A mere showing that the communication was from a client to his attorney is insufficient to warrant a finding that the communication is privileged. When a claim of privilege is challenged, the trial court should hold a hearing on the merit of the contention, not only with respect to the existence of the relationship, but also with respect to the nature of the information sought to be obtained. ... The rule is now embodied in sec. 901.04(1), Stats.: 'Preliminary questions concerning ... the existence of a privilege ... shall be determined by the judge.'

*Jax v. Jax,* 73 Wis. 2d 572, 581, 243 N.W.2d 831, 836 (1976) (citation omitted).

■

While the defendants contend that the hearing on their discovery motion was a *Jax* hearing, the transcript of the hearing reveals that no questions were raised by the defendants with respect to the existence of the attorney-client relationship between Dyson and other attorneys or whether she intended her communications with them to be confidential. Dyson had the burden of establishing the lawyer-client privilege, *Weil v. Investment/Indicators, Research, & Management,* 647 F.2d 18, 25 (9th Cir. 1981), but the defendants had the burden of indicating to the trial court at the hearing on their motion whether they challenged Dyson's intent that the communications she sought to protect be confidential. The defendants participated in

the hearing as if the preliminary questions as to the existence of the privilege had been answered in favor of its existence. The defendants may not now claim that Dyson failed to establish that the communications were intended to be confidential.

(b) *Waiver of Privilege By Voluntary Disclosure.* Section 905.11, Stats., provides:

> A person upon whom this chapter confers a privilege against disclosure of the confidential matter or communication waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication. . . .

Whether Dyson voluntarily disclosed confidential communications to third persons requires a finding of the historical facts. There has been no evidentiary hearing on this issue and the trial court has made no findings. Section 805.17(2), Stats., requires findings. "The purpose of the statute is to protect the rights of the litigants and to facilitate review of the record by an appellate court." *Hochgurtel v. San Felippo,* 78 Wis. 2d 70, 85, 253 N.W.2d 526, 532 (1977). Also, we do not have the benefit of the trial court's opinion on this issue. *See Rogers v. Oconomowoc,* 24 Wis. 2d 308, 318, 128 N.W.2d 640, 645 (1964). We do not consider this to be an appropriate case for us to search the record for evidence to sustain a finding which the trial court failed to make. *See Dodge v. Carauna,* 127 Wis. 2d 62, 67, 377 N.W.2d 208, 211 (Ct. App. 1985). We decline to decide this important question on the basis of the depositions of witnesses who have not been examined in the presence of the trial judge. Credibility of the witnesses may be very important in this case and the

trial judge should have the opportunity to see and hear the witnesses. The defendants may on remand move the court to determine, after hearing the evidence, whether Dyson by voluntary disclosure waived confidential communications or other matter to attorneys other than the defendants.

(c) *Fraud Exception.* Section 905.03(4), Stats., provides in part:

> There is no privilege under this rule:
>     (a)   If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

"[T]he attorney-client privilege was not created to shield clients from charges for fraudulent conduct, and a client who abuses the attorney-client relationship waives the attorney-client privilege." *United States v. Weger,* 709 F.2d 1151, 1156 (7th Cir. 1983). The mere charge of fraud or illegality will not, however, "set the confidences free." *Clark v. United States,* 289 U.S. 1, 15 (1933). "To drive the privilege away, there must be 'something to give colour to the charge;' there must be 'prima facie evidence that it has some foundation in fact.'" *Id.* (citation omitted).

The defendants claim that Attorney Welker's testimony proves that at least some of Dyson's claims against them are fabricated and she is guilty of fraud in using the court to extort $298,000 from them or their insurers. Without a prima facie showing that Dyson sought Welker's services to aid or enable her to commit a fraud, Welker's testimony is not available to fill the factual lacuna since his conversations with Dyson are subject to the lawyer-client privilege and

she properly preserved her objection to Welker's testimony as to those conversations. We conclude that the defendants have failed to make a prima facie showing of fraud.

On remand the defendants may move the court for an evidentiary hearing on the question of whether Dyson sought the services of attorneys other than the defendants to enable or aid her to commit what she knew or reasonably should have known to be fraud. We question, however, whether merely maintaining what may be a frivolous action constitutes the kind of fraud which may free otherwise confidential communications from the lawyer-client privilege.

Establishing a prima facie case that Dyson consulted other attorneys to enable or aid her to commit a fraud will necessarily involve examination of Dyson and the attorneys she consulted, either in discovery or at trial. This may prove difficult in view of the confidential nature of the communications between her and the attorneys. The Federal Advisory Committee commented on this problem as follows:

> While any general exploration of what transpired between attorney and client would, of course, be inappropriate, it is wholly feasible, either at the discovery stage or during trial, so to focus the inquiry by specific questions as to avoid any broad inquiry into attorney-client communications. Numerous cases reflect this approach.

Federal Advisory Committee's Note, Wis. R. Evid., 59 Wis. 2d R120 (1973).

Some of the cases approve "the cautious use of *in camera* proceedings" to resolve disputed issues of privilege. *In re Grand Jury Proceedings in Matter of Freeman,* 708 F.2d 1571, 1576 (11th Cir. 1983). *See also*

*In re John Doe Corp.,* 675 F.2d 482, 490 (2d Cir. 1982) (where conflicts about the confidentiality of evidentiary materials arise in preliminary proceedings, *in camera* submissions provide a method of judicial resolution which perserves confidentiality when justified); *State ex rel. Herget v. Waukesha Co. Cir. Ct.,* 84 Wis. 2d 435, 452, 267 N.W.2d 309, 317 (1978) (appropriate to make *in camera* inspection to determine if juvenile court records are protected by privilege); *State ex rel. Good Samaritan v. Moroney,* 123 Wis. 2d 89, 100–01, 365 N.W.2d 887, 893 (Ct. App. 1985) (appropriate for chairperson of patient's compensation panel to make *in camera* review to decide privilege or evidentiary questions). In *Clark v. United States,* 289 U.S. at 15, 16, the Supreme Court suggested that the prima facie evidence necessary to break the "seal of secrecy" may be shown to the satisfaction of the judge.

## IV.   THE SECTION 905.03(4)(c), STATS., EXCEPTION

We next consider the defendants' contention that the breach-of-duty exception, sec. 905.03(4)(c), Stats., applies. If they are correct, no privilege exists as to Dyson's communications with other attorneys and no further consideration of the privilege will be necessary.

The defendants contend that the questions Dyson refused to answer sought information relevant to the issue of their breach of duty to Dyson and are subject to the exception to the lawyer-client privilege stated in sec. 905.03(4)(c), Stats., which provides: "There is no privilege under this rule: (c) As to a communication relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer."

The defendants claim that when Dyson began this action she necessarily waived the lawyer-client privilege with respect to communications between her and the defendants because these communications will be the subject of a public trial.[4] They argue that since the lawyer-client privilege attaches to the communication, not to the individual to whom the communication is made, her waiver extends to all persons, including other attorneys, with whom the subject matter of the communications was discussed.

The defendants point to the physician-patient privilege exception stated in sec. 905.04(4)(c), Stats. If a patient puts in issue in litigation his or her physical, mental or emotional condition, there is no physician-patient privilege in discovery or at trial. The defendants discern from this exception a general public policy that, if a person chooses to litigate a matter subject to a privilege, the interest of society in the just resolution of controversies prevails over the privilege and the privilege is waived.

Sections 905.03 and 905.04, Stats., are modeled after the rules of evidence for the United States courts and magistrates, as prescribed by the United States Supreme Court. Foreword, Wis. R. Evid., 59 Wis. 2d Riv (1973). The federal rules counterpart of sec. 905.04 is Fed. R. Evid. 504, 28 U.S.C. Appendix 6 (U.S. Sup. Ct. version). The federal counterpart establishes a psychotherapist-patient privilege. Our court adopted a

---

[4]This claim was raised but not reached in *Continental Casualty Co. v. Pogorzelski,* 275 Wis. 350, 354, 82 N.W.2d 183, 185 (1957), which applied sec. 325.22, Stats. (1955). The court held that the appellant had failed to establish that disclosure of a confidential communication was necessary to his defense of an attorney's suit for his fees. *Id.*

physician-patient privilege. Federal Rule 504(d)(3) reads:

> There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

As to the exceptions contained in Rule 504(d), the Federal Advisory Committee notes:[5]

> The exceptions differ substantially from those of the attorney-client privilege, as a result of the basic differences in the relationships. While it has been argued convincingly that the nature of the psychotherapist-patient relationship demands complete security against legally coerced disclosure in all circumstances, Louisell, *The Psychologist in Today's Legal World: Part II,* 41 Minn. L. Rev. 731, 746 (1957), the committee of psychiatrists and lawyers who drafted the Connecticut statute concluded that in three instances the need for disclosure was sufficiently great to justify the risk of possible impairment of the relationship. Goldstein and Katz, *Psychiatrist-Patient Privilege: The GAP Proposal and the Connecticut Statute,* 36

---

[5]The interpretive notes of the Federal Advisory Committee may be resorted to in interpreting the Wisconsin rules of evidence. *See State v. Johnson,* 133 Wis. 2d 207, 226, 395 N.W.2d 176, 185 (1986). Although the United States Supreme Court's version of the rules of evidence as to privileges was not adopted by congress, the court's version remains of considerable utility as standards. *United States v. Mackey,* 405 F. Supp. 854, 857 (E.D. N.Y. 1975).

Conn. B. J. 175 (1962). These three exceptions are incorporated in the present rule.

. . . .

(3) By injecting his condition into litigation, the patient must be said to waive the privilege, in fairness and to avoid abuses. Similar considerations prevail after the patient's death.

Federal Advisory Committee's Note, Wis. R. Evid., 59 Wis. 2d R129–30 (1973).

██ The Wisconsin Supreme Court chose to follow the federal example and included in the physician-patient privilege a litigation exception, sec. 905.04(4)(c), Stats., but did not include a similar litigation exception in the lawyer-client privilege. It is apparent that the omission of a litigation exception in the rule establishing the lawyer-client privilege was not an oversight but a deliberate choice based on the different nature of the lawyer-client relationship. Seldom has the history of a statute or rule so clearly revealed the drafter's intent. We therefore reject the defendants' argument that the litigation exception to the physician-patient privilege establishes a public policy independent of statute that a client who sues for malpractice thereby waives any privilege in the litigation.

If a litigation exception similar to the physician-patient exception exists, it must be found in sec. 905.03(4)(c), Stats. In view of the history of secs. 905.03(4)(c) and 905.04(4)(c), a waiver of the lawyer-client privilege by maintaining a legal malpractice action cannot be inferred from the language of sec. 905.03(4)(c). The Judicial Council Committee's interpretive notes[6] confirm our conclusion that sec.

---

[6]The notes of the Judicial Council Committee may assist in

905.03(4)(c) excepts from the privilege only communications between the client and the lawyer who is accused of a breach of duty or between the lawyer and the client who is accused of a breach of duty.

The note to sec. 905.03(4)(c), Stats., cites *State v. Markey,* 259 Wis. 527, 49 N.W.2d 437 (1951), and *Murphey v. Gates,* 81 Wis. 370, 51 N.W. 573 (1892). Judicial Council Committee's Note, Wis. R. Evid., 59 Wis. 2d R120 (1973). In *Murphey* an attorney was allowed to testify to communications between himself and his client in his action to prove the client's debt to him. In *State v. Markey,* 259 Wis. at 541, 49 N.W.2d at 443, the court cited the report of the committee on professional ethics of the American Bar Association (1947) to the effect that an attorney is released from his obligation of secrecy "if the disclosure of privileged communications becomes necessary to protect the attorney's rights."

The Federal Advisory Committee's note to the federal counterpart to sec. 905.03(4)(c), Stats., is as follows:

> The exception is required by considerations of fairness and policy when questions arise out of dealings between attorney and client, as in cases of controversy over attorney's fees, claims of inadequacy of representation, or charges of professional misconduct. McCormick sec. 95. (Other citations omitted.)

Wis. R. Evid., 59 Wis. 2d R121 (1973).

interpreting the rules of evidence. *See State v. Nelson,* 138 Wis. 2d 418, 430, 406 N.W.2d 385, 390 (1987); *State v. Malone,* 136 Wis. 2d 250, 260–61 401 N.W.2d 563, 567 (1987).

The defendants may testify, without the consent of Dyson, to communications with her, to defend against her malpractice charges. However, they may not, over her assertion of the lawyer-client privilege, use in defense her testimony or the testimony of attorneys consulted by her as to confidential communications between them.

*Miller v. Superior Court,* 111 Cal. App. 3d 390, 168 Cal. Rptr. 589 (Ct. App. 1980), presented an almost identical fact situation. Miller brought a legal malpractice action against her attorney for negligent representation in a divorce action. The trial court ordered Miller to disclose the content of communications between herself and attorneys consulted after the alleged malpractice. This discovery was said to be justified by a waiver of the privilege when the lawsuit was filed. *Id.,* 111 Cal. App. 3d at 392, 168 Cal. Rptr. at 589. Under a statutory exception[7] similar to sec. 905.03(4)(c), Stats., the court held:

> Clearly, in an attorney breach case this exception applies only where the alleged breach is by the attorney from whom the information is sought. Where, as here, the client has not alleged a breach by the attorney involved in the communication in question, the privilege for that communication remains intact.

*Id.,* 111 Cal. App. 3d at 392–93, 168 Cal. Rptr. at 590.

Parties to the lawyer-client relationship must be able to openly discuss matters which might eventually lead to litigation. *See Jacobi v. Podevels,* 23 Wis. 2d

---

[7]The exception in California Evidence Code, sec. 954 provides: "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."

811

152, 157, 127 N.W.2d 73, 76 (1964). To construe sec. 905.03(4)(c), Stats., as broadly as would the defendants subverts the policy of the privilege.

## V. THE LAWYER-CLIENT PRIVILEGE

We conclude that confidential communications between Dyson and other attorneys she consulted regarding her divorce case and the defendants' representation of her are subject to a lawyer-client privilege. We must therefore consider the extent to which the privilege exists in this case.

It is generally agreed that the classic statement of the lawyer-client privilege is found in *United States v. United Shoe Machinery Corp.,* 89 F. Supp. 357, 358–59 (D. Mass. 1950):

> [T]he [lawyer-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the lawyer was informed (a) by his client (b) without the presence of strangers (c) for the purposes of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Annotation, *Applicability of Attorney-Client Privilege to Communications Made in Presence of or Solely to or by Third Person,* 14 A.L.R. 4th 594, 601–02 (1982).

The lawyer-client privilege is a product of the common law. 8 Wigmore, *Evidence,* sec. 2290, p. 542 (McNaughton rev. 1961). Our first statutory codification of the common law was adopted in 1878 and was taken verbatim from a New York statute. *Allen v. Ross,* 199 Wis. 162, 166, 225 N.W. 831, 832 (1929). The following oft-quoted statement of the Wisconsin Supreme Court was made with respect to the rule of the common law and sec. 4076, Stats. (1898), but expresses the public policy underlying sec. 905.03, Stats:

> The rule of the common law and of this statute within its proper limits is most salutary. It is essential to the ends of justice that clients should be safe in confiding to their counsel the most secret facts, and to receive advice and advocacy in the light thereof without peril of publicity. Disclosures made to this end should be as secret and inviolable as if the facts had remained in the knowledge of the client alone.

*Koeber v. Somers,* 108 Wis. 497, 504, 84 N.W. 991, 993 (1901). *See also Continental Casualty Co. v. Pogorzelski,* 275 Wis. 350, 353–54, 82 N.W.2d 183, 185 (1957), citing *Hickman v. Taylor,* 329 U.S. 495, 510–12 (1947). However, "[b]ecause the attorney-client privilege is 'an obstacle to the investigation of the truth' it should be 'strictly confined within the narrowest possible limits consistent with the logic of the principle.'" *Jax,* 73 Wis. 2d at 579, 243 N.W.2d at 836 (citations omitted). Wisconsin has recognized only a narrow ambit to the communications included within the lawyer-client privilege. *State ex rel. Dudek v.*

*Circuit Court,* 34 Wis. 2d 559, 579, 150 N.W.2d 387, 398 (1967).[8]

The inevitable conflict between the "salutary" policy of the lawyer-client privilege and the "fundamental polic[y] of our law ... that the judicial system and rules of procedure should provide litigants with full access to all reasonable means of determining the truth," *Jacobi v. Podevels,* 23 Wis. 2d at 156–57, 127 N.W.2d at 76, has resulted in decisions attempting an accommodation between these policies. We apply the principles of these decisions to the questions asked of Dyson and Attorney Welker with respect to which Dyson has asserted a lawyer-client privilege.

█

(a) *Names of Attorneys Consulted.* Dyson refused to disclose the names of other attorneys she had consulted about her divorce case. The privilege pro-

---

[8]The *Dudek* court set forth the policy reasons behind the restrictions placed on the scope of the lawyer-client privilege as follows:

> In discussing the reasons for the narrowness of the scope of the attorney-client privilege, the courts almost invariably look to the liberal policy of discovery evidenced by the modern statutory pretrial procedures. Besides the fact that the privilege has a long history of rather restricted compass, there is another reason for this restriction other than the liberality of modern discovery. The narrowness of scope is due to the procedural effect of placing an article of information under the umbrella of the privilege. Unless one of the few exceptions can be utilized, the protection afforded by the privilege is absolute. No showing of necessity, hardship, or injustice can require an attorney to reveal the protected information if his client does not waive the privilege, no matter how necessary the information is to a resolution of the particular issue on its merits. This drastic consequence should be narrowly confined.

*Id.,* 34 Wis. 2d at 581, 150 N.W.2d at 399–400.

tects *communications* and not facts or evidence. *Jax,* 73 Wis. 2d at 579, 243 N.W.2d at 835. The name of any other lawyer Dyson consulted is a fact, not a communication. The fact of the creation or the existence of a lawyer-client relationship is collateral to, but not an ingredient of, any protected confidential communication. *Baskerville v. Baskerville,* 75 N.W.2d 762, 767 (Minn. 1956). Dyson can be compelled to reveal the names of other attorneys consulted.[9]

(b)  *Subject Matter of Communications.* Dyson refused to disclose whether she had discussed with other attorneys custody, maintenance and how the defendants had represented her in her divorce action. While the questions she refused to answer did not ask her to reveal what communications she had with the attorneys relative to these subjects, the next logical inquiry in each case would have been as to her discussions of these subjects with the attorneys. Since such an inquiry would plainly reach into the privileged area, and knowledge of the general subject matter of her communications with other attorney would not aid in a search for the truth, we conclude Dyson may assert the privilege as to such inquiries.

Such inquiries threaten to reveal the substance of lawyer-client communications. When that is the case, an answer may not be compelled. Stone & Liebman,

---

[9]Dyson admits that she consulted with more than forty attorneys about her divorce. It appears that these attorneys were consulted for the purpose of obtaining modification of the divorce judgment or to handle post-judgment enforcement proceedings. There is no indication in the record which attorneys Dyson consulted regarding the commencement of a malpractice action against these defendants.

*Testimonial Privileges,* sec. 1.26, p. 57 (1983). Allowing questions on the subject matter of communications,

> would erode the basic public policy underlying the attorney-client privilege. It would be a simple matter to sharpen the questions to require greater and greater specificity regarding the matter discussed so as to avoid altogether the effectiveness of the privilege. ... [I]f the responses were merely limited to the most general terms of the subject discussed, it would be of little benefit or enlightenment to an opponent or to the Court, for certainly the privilege would prevent further questions going to the content of the discussions.

*Lee National Corporation v. Deramus,* 313 F. Supp. 224, 227 (D. Del. 1970).

Dyson may not be compelled to answer whether she discussed with other attorneys subjects such as custody or maintenance. The testimony compelled from Attorney Welker as to the topic and substance of conversations he had with Dyson was subject to the lawyer-client privilege and may be excluded at trial under sec. 905.12, Stats.

(c) *Dyson's Subjective Knowledge of Facts.* Dyson asserted the privilege in response to questions as to what were her criticisms of the defendants' representation of her and her reasons for changing attorneys. She also refused to disclose how she arrived at the dollar amounts she claims as damages and legal fees.

■
Dyson claims she learned by consulting other attorneys that the defendants were negligent and that she was damaged and therefore that knowledge is subject to the privilege. We disagree. Defendants seek to discover her subjective knowledge of the basis for

her action and the nature and amount of her damages.[10] "[T]he privilege ... does not protect the client from searching discovery process which may force him to disgorge what he knows about the case, at least in civil actions." *Dudek,* 34 Wis. 2d at 580, 150 N.W.2d at 399. Dyson need not disclose her communications with other attorneys in which she may have gotten advice as to whether and how the defendants were negligent in their representation of her. However, because the questions in this area asked of Dyson do not include communications they must be answered. *See State ex rel. Reynolds v. Circuit Court,* 15 Wis. 2d 311, 317, 112 N.W.2d 686, 689 (1961) (application of attorney-client privilege requires distinction between compelling a witness to disclose his knowledge or information of relevant facts and compelling him to disclose the fact of past communication of his knowledge, information or other matters to his attorney).

(d) *Facts Communicated to Other Attorneys.* Dyson may have refused to answer some of the questions asked of her in the mistaken belief that if she had communicated a fact within her knowledge to an attorney that fact as well as the communication became subject to the lawyer-client privilege. A party may not conceal a fact merely by revealing it to his lawyer. *Dudek,* 34 Wis. 2d at 580, 150 N.W.2d at 399. The client may not refuse to disclose any relevant fact within his or her knowledge merely because such fact has been incorporated into the client's communication

[10]In several instances Dyson or her attorney stated that the dollar figures were determined by the attorney. If that is the case, a responsive answer by Dyson in such instances would be that the amounts were suggested by her attorney.

with an attorney. *Upjohn Co. v. United States,* 449 U.S. 383, 396 (1981). The privilege does not immunize the knowledge of the client. *Knoff v. American Crystal Sugar Co.,* 380 N.W.2d 313, 320 (N.D. 1986), citing 2 J. Weinstein & M. Berger, *Weinstein's Evidence,* para. 503(a)(3)[01] (1985). *See also Reynolds,* 15 Wis. 2d at 317–18, 112 N.W.2d at 689 (defendant in a civil action may be compelled to testify to his own actions relevant to the action but neither he nor his attorney may be compelled to testify how the defendant described the same events to his attorney).

(e) *Communications Between Attorneys.* The defendants questioned Attorney Welker as to his conversations with Dyson's present counsel. Dyson objected to Welker's disclosing what was said in those conversations. The defendants may question Welker regarding his conversations with Dyson's present attorney as long as his testimony does not reveal communications between himself and Dyson. *See In re Downing's Will,* 118 Wis. 581, 590–91, 95 N.W. 876, 879–80 (1903) (communications between an attorney and a person not his client while conducting business for such client is not privileged).

(f) *Communications With Third Parties.* Dyson also refused to answer questions regarding her consultation with a vocational counselor. *See* note 3, *infra.* Such consultation is not protected by the lawyer-client privilege even if the consultation is recommended by the client's attorney. *See Knoff v. American Crystal Sugar Co.,* 380 N.W.2d at 320–21 (appraiser not protected by the attorney-client privilege even though hired by the attorney).

818

(g) *Fee Arrangement With Present Counsel.* Dyson refused to answer questions as to her fee arrangement with her present counsel. We conclude that a lawyer-client privilege does not attach to communications between the client and the lawyer respecting fees. *See Matter of Witnesses Before Sp. March 1980 Gr. Jury,* 729 F.2d 489, 491 (7th Cir. 1984); *Baskerville,* 75 N.W.2d at 767; 81 Am. Jur. 2d, *Witnesses,* sec. 215, p. 247 (1976).

The client may prefer to not disclose the fee arrangement with the attorney but the client's desire for confidentiality does not serve any of the purposes of the privilege. *See United States v. Jeffers,* 532 F.2d 1101, 1114–15 (7th Cir. 1976), *vacated in part on other grounds,* 432 U.S. 137 (1977). The reason underlying the privilege is to encourage the client to disclose fully the facts and circumstances of his or her case to the attorney. We conclude that denial of the privilege to communications regarding fees cannot have an adverse effect on a client's willingness to disclose fully the facts relative to his or her case.

## VI.  DIRECTIONS ON REMAND

On remand, the trial court may make an order consistent with this opinion requiring Dyson to make discovery as required by the court's order.[11] If Dyson fails to comply with such order and defendants move for the imposition of sanctions, the appropriateness of sanctions, including dismissal of Dyson's action with prejudice, will be within the court's discretion. *Fur-*

---

[11]Our opinion does not reach other grounds for objection to certain questions or followup questions, nor have we considered the admissibility of Dyson's possible answers.

*renes v. Ford Motor Co.,* 79 Wis. 2d 260, 267, 255 N.W.2d 511, 515 (1977).

*By the Court.*—Judgments reversed and cause remanded with directions.