[No. 56061–7.   En Banc.   March 1, 1990.]

JOHN D. PAPPAS, *Respondent,* v. HAROLD HOLLOWAY,
ET AL, *Petitioners.*

*Edwards & Barbieri,* by *Malcolm L. Edwards* and *Catherine Wright Smith; Danielson, Harrigan, Smith & Tollefson,* by *David Strout,* for petitioners.

*Petersen, Lycette & Snook, P.S.,* by *John P. Lycette, Jr.,* and *Janet Lim,* for respondent.

DOLLIVER, J.—During the late 1970's, defendants Harold and Rosemarie Holloway sold cattle infected with brucellosis through their dealership in Lewis County. In 1978, 1980, and 1981, lawsuits were filed against them by purchasers of the diseased cattle. Initially these suits were filed

in Lewis and Whatcom Counties. Later, they were consolidated into one action filed in Whatcom County.

The Holloways employed several attorneys to defend them in connection with the several suits filed. Soon after the first suit was filed in Lewis County in 1978, the Holloways hired Larry Fagerness and the firm of Moore, Tiller, Fagerness and Wheeler to defend them. Mr. Fagerness' representation continued until the Lewis County cases were consolidated with the Whatcom County cases in 1982. In September 1981, the Holloways hired plaintiff John Pappas in connection with the Whatcom County suits. When all the suits were consolidated in June 1982, Pappas took over representation of the entire matter. In September 1983, James Thompson commenced joint representation of the Holloways with Pappas. Grange Insurance Association, which issued an insurance policy to the Holloways in the event of an adverse judgment against them, paid Mr. Thompson's attorney fees. Mr. Thompson's representation continued throughout the trial, appeal, and eventual settlement of the case.

In April 1984, 1 month before the consolidated action went to trial, Pappas withdrew as the Holloways' attorney. Pappas obtained court permission to do so. Shortly before Pappas' withdrawal, the Holloways hired Douglas Shepherd of Shepherd and Abbott to assist Mr. Thompson in bringing the case to trial. Grange Insurance Association also paid Mr. Shepherd's fees. The trial resulted in an adverse judgment totaling approximately $2.9 million against the Holloways. The case was appealed and Grange Insurance Association eventually agreed to pay $1.5 million for the full settlement of all claims against the Holloways.

In April 1984, Pappas sued the Holloways for his attorney fees which totaled approximately $19,000. The Holloways counterclaimed, alleging Pappas committed malpractice. The specific allegations against Pappas included his: (1) failure to perform a full investigation of the Whatcom County cases; (2) failure to interview and designate

expert witnesses; (3) failure to conduct an investigation through the discovery process; (4) failure to analyze properly critical insurance issues and to tender timely defense of the matter to Grange Insurance; (5) failure to prepare and present a summary judgment motion on the issue of strict liability; (6) withdrawal as counsel 1 month before trial; and (7) failure to conduct investigation through the discovery process resulting in the loss of documentary evidence.

Pappas responded to the Holloways' counterclaim by bringing third party complaints against all the attorneys who also represented the Holloways in the brucellosis litigation, alleging they owed the Holloways a duty of care which they breached. Pappas also included Grange Insurance Association as a third party defendant under a theory of bad faith.

Pappas' specific allegations against third party defendants are set out below in some detail. Against Mr. Fagerness and Mr. Thompson, Pappas' claims include their failure to conduct prompt and necessary pretrial discovery resulting in the loss of documents pertinent to the Holloways' defense and their failure promptly and properly to investigate the Holloways' insurance coverage. Against Mr. Thompson and Mr. Shepherd, Pappas' claims include their failure to obtain a continuance of the trial date in the brucellosis litigation, failure properly to handle the damages aspect of the litigation and failure properly to use the pretrial materials obtained and prepared by Pappas. Against Mr. Fagerness only, Pappas alleges he failed to tender defense of the brucellosis litigation to the Holloways' insurance carrier. Against Mr. Thompson only, Pappas' claims include his failure to investigate every aspect of the Holloways' defense and failure to prepare a motion for summary judgment on the issue of strict liability. Against Mr. Shepherd only, Pappas alleges he failed to conduct proper discovery, to contact Pappas in conjunction with the litigation pending in Lewis County, and to seek assistance from Pappas although assistance was offered.

In August 1987, Pappas filed a motion to compel third party defendants to produce documents relating to insurance coverage, a declaratory judgment filed in the brucellosis litigation, fee arrangements between the Holloways and third party defendants, consolidation of the actions and the subsequent appeal of the adverse final judgment, and correspondence received from the states of Washington and Idaho pertaining to the brucellosis litigation. The third party defendants objected to production of the following materials on the basis they are protected by the attorney–client privilege: (1) correspondence between any of the attorneys to the Holloways; (2) correspondence from the Holloways to their attorneys or to Grange Insurance Association; and (3) any notes made by the lawyers during conversations with the Holloways. Discovery of the following documents was objected to based on the work–product doctrine: (1) lawyer's notes taken during depositions; (2) lawyer's notes and trial memoranda containing the mental impressions, opinions, and legal theories of the attorneys; and (3) legal memoranda prepared during the course of the litigation.

After oral argument on the motion to compel, the trial court granted Pappas' motion. In ordering production, the court concluded the Holloways waived the attorney–client privilege as to all the attorneys who participated in the brucellosis litigation when they sued Pappas for malpractice. The court also held the work–product doctrine did not protect materials prepared in the course of the brucellosis litigation since that litigation had already terminated.

The Court of Appeals denied review of the trial court's ruling. We granted review and affirm, although in part for reasons other than those set forth by the trial court.

We turn first to the issue raised by the attorney–client privilege. RCW 5.60.060(2) provides the rule in Washington:

> An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by

the client to him or her, or his or her advice given thereon in the course of professional employment.

This same privilege afforded the attorney is also extended to the client under the common law rule. *State v. Emmanuel,* 42 Wn.2d 799, 815, 259 P.2d 845 (1953) (citing *State v. Ingels,* 4 Wn.2d 676, 104 P.2d 944, *cert. denied,* 311 U.S. 708 (1940)).

The Holloways raise two central arguments why they believe the trial court erred in finding the attorney–client privilege waived as to the third party defendants. First, they argue the right to waive the attorney–client privilege is a personal right which belongs to the client exclusively. Although they concede they waived the privilege between themselves and Pappas by counterclaiming for malpractice, they argue this waiver should not automatically extend to include the third party defendants as well. Second, they argue the information Pappas is seeking is irrelevant to his malpractice defense. What is relevant, they argue, is what actually happened rather than what should have happened. This information, they allege, is available to Pappas through the public record.

■ ■ The purpose of the attorney–client privilege "'is to encourage free and open attorney–client communication by assuring the client that his communications will be neither directly nor indirectly disclosed to others.'" *Heidebrink v. Moriwaki,* 104 Wn.2d 392, 404, 706 P.2d 212 (1985) (quoting *State v. Chervenell,* 99 Wn.2d 309, 316, 662 P.2d 836 (1983)); *see also State ex rel. Sowers v. Olwell,* 64 Wn.2d 828, 394 P.2d 681, 16 A.L.R.3d 1021 (1964). The attorney–client privilege applies to communications and advice between an attorney and client and extends to documents which contain a privileged communication. *Kammerer v. Western Gear Corp.,* 27 Wn. App. 512, 517–18, 618 P.2d 1330 (1980), *aff'd,* 96 Wn.2d 416, 635 P.2d 708 (1981). Because the privilege sometimes results in the exclusion of evidence which is otherwise relevant and material, contrary to the philosophy that justice can be achieved only with the

fullest disclosure of the facts, the privilege cannot be treated as absolute; rather, it must be strictly limited to the purpose for which it exists. *Dike v. Dike,* 75 Wn.2d 1, 11, 448 P.2d 490 (1968).

There are several notable exceptions to the attorney–client privilege. One example of particular importance here occurs when an attorney is sued for malpractice by a client. Where it would be manifest injustice to allow the client to take advantage of the rule of privileges to the prejudice of the attorney, or when it would be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights, this court has ruled the privilege is waived. *Stern v. Daniel,* 47 Wash. 96, 98, 91 P. 552 (1907). Additionally, Rules of Professional Conduct 1.6(b)(2) allows an attorney brought up on charges of mismanagement to testify as to communications between himself and the client in order to defend adequately against such allegations.

Whether waiver of the attorney–client privilege should extend to third party defendants under the particular facts presented by this case is a question of first impression in this court. The Holloways cite authority from other jurisdictions in advancing their position that the privilege has not been waived as to the third party defendants. We find two of these cases distinguishable from the present case on the same grounds. *See Miller v. Superior Court,* 111 Cal. App. 3d 390, 168 Cal. Rptr. 589 (1980); *see also Dyson v. Hempe,* 140 Wis. 2d 792, 413 N.W.2d 379 (1987).

Both plaintiffs in *Miller* and *Dyson* sued their former attorneys for malpractice stemming from the negligent handling of their divorce cases. In both cases, the defendants sought disclosure of communications between the plaintiffs and their current attorneys, alleging that by filing malpractice actions against the defendants, plaintiffs in effect waived the attorney–client privilege as to all attorneys involved. Both courts held that the communications sought were protected by the attorney–client privilege. However, these cases are significantly different from the

present case. Here, Pappas is seeking communications which took place during the course of the brucellosis litigation and would therefore be relevant to the malpractice issue raised by the Holloways. Neither the court in *Miller* nor in *Dyson* discussed whether such communications were protected. Instead, those courts addressed the privilege only with regard to communications which took place after any alleged malpractice would have been committed.

In *Lohman v. Superior Court,* 81 Cal. App. 3d 90, 146 Cal. Rptr. 171 (1978), the court held plaintiff, who had been placed in temporary conservatorship and thereafter sued the conservator and her attorney, had not waived the attorney–client privilege by testifying to communications with her prior attorney regarding the lawsuit she had filed. The defendants sought to depose the prior attorney and to question him about these conversations. Like *Miller* and *Dyson,* the communications being sought in *Lohman* did not take place during the course of the underlying proceedings. Instead, the communications took place after plaintiff filed her suit, and the subject matter of these communications was the suit itself. We therefore also decline to follow *Lohman.*

In *Jakobleff v. Cerrato, Sweeney & Cohn,* 97 A.D.2d 834, 468 N.Y.S.2d 895 (1983), plaintiff sued her former attorneys for damages resulting from their alleged negligence in securing a proper settlement in her divorce. *Jakobleff,* at 834. Defendants impleaded plaintiff's former husband as well as the attorney who was handling plaintiff's claim against them, alleging plaintiff's present attorney failed to mitigate damages by pursuing possible remedial actions available against plaintiff's former husband. *Jakobleff,* at 835. In order to prove this allegation, defendants sought disclosure of certain communications between plaintiff and her attorney. *Jakobleff,* at 835. The court held the communications were protected by the attorney–client privilege, and that the privilege had not been waived:

> By bringing an action against her former attorneys for legal malpractice, plaintiff has placed her damages in issue, and

> defendants may both raise the defense of plaintiff's failure to mitigate damages and assert a third–party claim for contribution against the present attorney for those damages for which the former attorneys may be liable to plaintiff. However, it simply cannot be said that plaintiff has placed her privileged communications with her present attorney in issue, or that discovery of such communications is required to enable defendants to assert a defense or to prosecute their third–party claim. To conclude otherwise would render the privilege illusory in all legal malpractice actions: the former attorney could, merely by virtue of asserting a third–party claim for contribution against the present attorney, effectively invade the privilege in every case.

(Citation omitted.) *Jakobleff,* at 835.

We agree with the concerns raised in *Jakobleff* regarding the danger of making illusory the attorney–client privilege in legal malpractice actions. However, we find *Jakobleff* distinguishable from the present case. The distinction between the two cases rests largely on the fact the plaintiff's present attorney in *Jakobleff* did not participate in the underlying litigation which gave rise to the malpractice claim against the defendants. Nor did the defendants' third party complaint against plaintiff's present attorney allege involvement in securing a proper settlement in the underlying divorce proceedings. Instead, plaintiff's present attorney was impleaded on the damage issue only. Consequently, any communications between this attorney and plaintiff, which would have taken place after the underlying divorce became final, would have no effect upon the malpractice issue raised in plaintiff's complaint. This is significantly different from the case before us wherein Pappas has alleged the same cause of action against the third party defendants as the Holloways have alleged against him. Communications between the Holloways and third party defendants concerning the brucellosis litigation are relevant not only to the issue of damages and contribution, but are also relevant to the malpractice issue raised by the Holloways in their counterclaim. For this reason, we find *Jakobleff* inapposite.

■ In *Hearn v. Rhay,* 68 F.R.D. 574 (E.D. Wash. 1975), the United States District Court for Eastern Washington developed a test to determine whether the facts in a given case support an implied waiver of the attorney–client privilege. The plaintiff in *Hearn,* an inmate at the Washington State Penitentiary in Walla Walla, sued state prison officials in their official capacity for alleged civil rights violations. *Hearn,* at 576–77. The defendants raised the affirmative defense of qualified immunity from suit on the grounds they acted in good faith and on advice of their legal counsel. *Hearn,* at 577. When plaintiff requested disclosure of communications between defendants and their attorneys, defendants refused to comply on the grounds the communications were protected under the attorney–client privilege. *Hearn,* at 577. Plaintiff argued the attorney–client privilege did not cover the communications, or, in the alternative, that defendants waived the privilege by asserting their good faith affirmative defense. *Hearn,* at 580. In holding defendants were required to disclose the communications, the trial court concluded that where the following three conditions are satisfied, an implied waiver of the attorney–client privilege should be found: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. *Hearn,* at 581.

Several courts have criticized the approach taken in *Hearn. See Succession of Smith v. Kavanaugh, Pierson & Talley,* 513 So. 2d 1138 (La. 1987) and cases cited therein. In refusing to follow *Hearn,* the court in *Smith* stated:

> We have not followed the *Hearn v. Rhay* test because it improperly undermines the legislatively established attorney–client privilege by causing courts to reassess the privilege by weighing the individual privilege–holder's interests against his opponent's need for evidence whenever the privilege is attacked. . . . This ignores the general interest of the system of justice in maintaining the privilege and leads to automatic

waiver even when there has been no misuse by the privilege–holder or unfairness to his opponent. *Succession of Smith,* at 1145.

■ We disagree with this criticism of *Hearn* in the context of the present case. While it is true that the attorney–client privilege is statutory in nature, it is also true that this court has held that the privilege itself should be strictly limited for the purpose for which it exists. *Dike v. Dike,* 75 Wn.2d 1, 11, 448 P.2d 490 (1968). In this instance, the Holloways cannot counterclaim against Pappas for malpractice and at the same time conceal from him communications which have a direct bearing on this issue simply because the attorney–client privilege protects them. To do so would in effect enable them to use as a sword the protection which the Legislature awarded them as a shield.

Applying *Hearn* to the present case, we find the record supports an implied waiver of the attorney–client privilege as to all the attorneys who were involved in defending the Holloways in the underlying litigation. First, the Holloways counterclaimed against Pappas for malpractice. This affirmative act was the catalyst which caused Pappas to file his third party complaints against the other attorneys involved. Second, the Holloways' counterclaim itself caused malpractice to become an issue in this litigation. Pappas' claims against third party defendants are virtually identical to the claims made against him by the Holloways; hence, his third party complaints add nothing new to the issue of malpractice. (These allegations as well as Pappas' requests for information have been previously laid out in some detail in this opinion.)

Finally, to allow the Holloways to block Pappas' request for communications relating to the brucellosis litigation would effectively deny him an adequate defense. In order for the Holloways to prove Pappas committed malpractice, they will have to show, among other things, that Pappas had a duty to exercise the care and skill of a reasonably prudent attorney and that Pappas failed to meet this duty. *Halvorsen v. Ferguson,* 46 Wn. App. 708, 711–12, 735 P.2d

675 (1986), *review denied,* 108 Wn.2d 1008 (1987). Contrary to the Holloways' claim that the only information relevant to this issue is what actually happened, this inquiry will involve examining decisions made at various stages of the underlying litigation. This will necessarily involve information communicated between these attorneys and the Holloways. This is particularly true given that Pappas was not the attorney who actually tried the case, nor did he have any part in its eventual settlement. For the foregoing reasons we affirm the trial court.

We next consider whether the work–product doctrine protects documents Pappas requested. Civil Rule 26(b)(3), which establishes the work–product doctrine, provides in part:

> [A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The trial court held the work–product doctrine did not apply at all to the Holloways' malpractice claim since the materials Pappas requested were prepared in anticipation of litigation which had already terminated. We disagree with the trial court that the protection provided by the work–product doctrine ceases after the litigation for which the documents were prepared has terminated.

In *Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947), the United States Supreme Court recognized qualified immunity for an attorney's work product and concluded materials which fell under the doctrine need only be produced upon a substantial showing of necessity or justification. *Hickman,* at 510. This conclusion was drawn in large part by concern over the ramifications of allowing opposing parties to search freely the files of their respective counsel:

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would

remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman,* at 511.

Courts have generally relied on *Hickman* in holding the work–product doctrine continues to protect materials prepared in anticipation of litigation even after the litigation has terminated. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir. 1973); *see also* C. Wright & A. Miller, *Federal Practice* § 2024, at 200–01 (1970). We agree that the underlying purposes served by the work–product doctrine and articulated in *Hickman* can be preserved only if the protection attaches even after litigation has terminated. For this reason we hold the trial court erred in ruling the work–product doctrine did not apply in this case. The issue then becomes whether, according to CR 26(b)(3), Pappas has shown a substantial need for the information he requested.

■ Whether a party has shown a substantial need within the meaning of CR 26(b)(3) is ordinarily vested in the sound discretion of the trial judge, who should look at the facts and circumstances of each case in arriving at an ultimate conclusion. *Heidebrink v. Moriwaki,* 104 Wn.2d 392, 401, 706 P.2d 212 (1985). To justify disclosure, a party must show the importance of the information to the preparation of his case and the difficulty the party will face in obtaining substantially equivalent information from other sources if production is denied. *Heidebrink,* at 401. The clearest case for ordering production is when crucial information is in the exclusive control of the opposing party. *Heidebrink,* at 401.

In the present case, the facts on the record and the unique situation presented by these facts establish a substantial need for the materials requested without requiring further examination of the materials by the trial court. Much of the reasoning for this conclusion has already been

discussed in conjunction with the attorney–client privilege. Pappas' contribution claims against the attorneys who also represented the Holloways are nearly identical to those alleged by the Holloways. Pappas' requests for documents are as necessary to his claims against the third party defendants as they are to the adequate defense of the allegations made by the Holloways.

Nor does a substantial equivalent to the materials and documents Pappas has requested exist. The nature of a malpractice claim necessitates inquiry into the actions taken during the course of the litigation in question. Here, documents prepared in anticipation of the brucellosis action, which are in the exclusive control of the third party defendants, are unavailable in any other source to which Pappas has access. For the foregoing reasons, we affirm the trial court's decision to compel third party defendants to produce the requested documents.

The remaining issue we must consider is whether the mental processes, thoughts, and opinions of the third party defendants, insofar as they are part of the materials Pappas has requested, are absolutely immune from discovery under CR 26(b)(3) because they are "opinion work product". The rule provides in part:

> In ordering discovery of such materials when the required showing has been made, the court *shall* protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

(Italics ours.) CR 26(b)(3).

Other jurisdictions are not in agreement as to the degree of protection afforded under the rule to opinion work product. Some courts hold that to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification. *In re Sealed Case,* 676 F.2d 793, 809–10 (D.C. Cir. 1982) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 401, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)). Other

courts have held that without exception an attorney's opinion work product is absolutely immune from discovery. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir. 1974); *In re Grand Jury Proceedings,* 473 F.2d 840 (8th Cir. 1973). These courts generally justify such a strict reading of the rule on the fact the rule itself provides the court *shall* protect such material from discovery. This approach, however, has been criticized. *See* Note, *Protection of Opinion Work Product Under the Federal Rules of Civil Procedure,* 64 Va. L. Rev. 333 (1978).

A third approach takes a middle ground between the approaches described above. These courts hold that where the material sought to be discovered is central to a party's claim or defense, an exception to the strict rule created by CR 26(b)(3) should apply and discovery should be allowed. *Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725 (1983); *In re Murphy,* 560 F.2d 326 (8th Cir. 1977); 4 J. Moore, J. Lucas & G. Grotheer, *Federal Practice* ¶ 26.64[3.–2], at 385 *et seq.* (2d ed. 1989).

We find the approach taken in *Brown* provides the most equitable solution to the competing interests presented in this case. The mental impressions and opinions of the attorneys who represented the Holloways during the brucellosis litigation are an integral part of the malpractice issue present here. These issues were initially raised by the Holloways in their counterclaim. Furthermore, inquiry into the mental impressions of the attorneys while the brucellosis litigation was ongoing is crucial to Pappas' defense. Requiring him to meet a higher standard under these circumstances than *Brown* provides for would only amount to the addition of needless costs and expenses to all the parties in this case.

We affirm the trial court's ruling that the Holloways waived the attorney–client privilege as to all attorneys involved in the brucellosis litigation. We also hold the

materials which have been withheld under the work–product doctrine are discoverable by Pappas.

CALLOW, C.J., UTTER, BRACHTENBACH, DORE, ANDERSEN, and DURHAM, JJ., and BAKER and HAMILTON, JJ. Pro Tem., concur.