OPINION OF THE COURT
Jane S. Solomon, J.
This action for legal malpractice arises from a 1985 lawsuit by the Long Island Lighting Company (LILCO) against the corporate predecessor of plaintiff IMO Industries, Inc. (IMO) in the United States District Court for the Southern District of New York. LILCO alleged that the predecessor had sold it a defective electric power generator, and the suit resulted in a jury verdict and judgment against IMO for nearly $20 million. International Insurance Co. (International) provided second-layer insurance coverage for the predecessor with a limit of $10 million in excess of $10 million liability (another company provided insurance for the first $10 million). International also provided fourth-layer coverage with a limit of $10 million in excess of $40 million liability. IMO requested that International participate in settling the LILCO matter and help pay for its defense. International agreed to pay $10 million toward IMO’s defense, but later commenced an action in the California state court (California action), subsequently removed to the United States District Court for the Northern District of California,[1] to recover its payment on the ground that it did not insure the LILCO claim.[2] Defendant Anderson Kill & Olick, P.C. (the captioned defendants all refer to a single law firm, hereinafter referred to as Anderson Kill) represented IMO in the California action.
In connection with a motion made in that action, the attorneys, including Anderson Kill, prepared a “Joint Stipulation of Undisputed Facts Pertaining To Pending Motions” (joint stipulation) and filed it with the court on November 18, 1994. *607 Paragraph 18 of the joint stipulation states that “International and IMO agreed that International would participate in defense or settlement of the LILCO action on a ‘Johansen-type’ basis.”
The phrase “Johansen-type basis” refers to a decision of the Supreme Court of California in which the court noted that an insurer may assert a defense of noncoverage although it subsequently makes a settlement payment in the underlying action; if it ultimately succeeds in proving noncoverage, the insurer may recover the settlement payment from the insured. (Johansen v California State Auto. Assn. Inter-Ins. Bur., 15 Cal 3d 9, 538 P2d 744 [1975].)
By an order dated December 14, 1994, the judge in the California action granted International’s motion to dismiss IMO’s counterclaim, denied IMO’s cross motion for summary judgment, and sua sponte granted summary judgment in favor of International because it provided no coverage for IMO in the LILCO action as a matter of law. The court then requested that IMO show cause why it should not reimburse International’s defense and settlement costs. In its ensuing decision, the court rejected IMO’s argument that paragraph 18 is ambiguous as to whether the parties agreed that IMO’s defense costs were subject to a “Johansen-type” reimbursement. (International Ins. Co. v Red & White Co., 1995 WL 150517, 1995 US Dist LEXIS 4549 [ND Cal 1995].) In early 1995, IMO retained another law firm, Farella Braun & Martell, LLP (Farella), to represent it in the California action. Farella sought relief from the District Court from the March 1995 decision, without success. The litigation in the California action continued, and IMO settled it unfavorably in 1997. Farella’s representation of IMO in the California action ended at that time. IMO then commenced this action against Anderson Kill alleging that it negligently participated in drafting the joint stipulation, and paragraph 18 in particular.
The significance of this history is that Anderson Kill has demanded production of documents related to the California action.[3] At issue are documents containing communications made after March 1995 between IMO employees and Farella, *608 and IMO employees and IMO’s general counsel. Anderson Kill argues that the documents are relevant and necessary to prove its contention that the joint stipulation was not negligently drafted, and that IMO would have lost or unfavorably settled the California action anyway. The documents may shed light on how the amount of IMO’s settlement with International was formulated, which is a measure of damages in this action. The documents may also help Anderson Kill prove that it stopped representing IMO no later than March 1995. IMO argues that the documents may be withheld because they are subject to the attorney-client privilege and work product immunity.
IMO submitted the disputed documents to the court for in camera review (IMO also submitted a list of the names and positions of persons mentioned in the documents, which has been marked as an exhibit to this motion). Arguments of counsel can be summarized as follows: Anderson Kill claims that IMO waived the attorney-client privilege with respect to all communications regarding the California action. At the very least, the privilege covers only confidential communications for the purpose of seeking or providing legal advice, and those communications regarding facts or events rather than legal advice are not privileged. IMO is using the privilege as a sword rather than a shield when it puts the California action at issue and then refuses to disclose what happened in that lawsuit, including to what degree, if any, Anderson Kill was involved as attorney.
IMO argues that the alleged malpractice occurred on or before November 1994, so Anderson Kill is entitled only to documents up to that date because subsequent documents are not relevant in determining whether the law firm was negligent. IMO says that bringing this malpractice action does not constitute a waiver of the privilege with respect to its communications regarding the California action with Farella or its general counsel.
The wrinkle in all of this is that the statute of limitations in California for legal malpractice is one year. (Cal Code Civ Pro § 340.6 [for purposes of this decision, it is unnecessary to determine whether California’s statute of limitations applies; it is referred to purely by way of explaining the parties’ *609 arguments].) If Amderson Kill stopped representing IMO in March 1995, then IMO’s time to bring a lawsuit may have expired in March 1996. This action was commenced in 1997.
IMO takes no position as to when Anderson Kill stopped representing it. Instead, it argues that there may have been continuing representation through 1996 or even into 1997, but that it should not be compelled to disclose documents regarding the California action that may reveal the extent of Anderson Kill’s representation if doing so means it must disclose communications with the Farella firm or its general counsel.
Discussion
A. Attorney-Client Privilege:
Confidential communications made in the course of professional employment between a client (including a corporate client) and its attorney are privileged unless waived, subject to certain exceptions. (CPLR 4503 [a].) The policy behind the privilege has evolved over time, but now it is generally recognized that the reason for it is to encourage full and frank communication between attorneys and their clients, and thereby promote a broader public interest in the observance of law and administration of justice. (See, 8 Wigmore, Evidence § 2290 et seq. [McNaughton rev 1961 and Supp 2002]; Upjohn Co. v United States, 449 US 383, 389 [1981].)
The attorney-client privilege is waived where the client places the subject matter of the communication in issue or where the invasion of the privilege is required to determine the validity of the client’s claim or defense and application of the privilege would deprive the adversary of vital information. (Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835 [2d Dept 1983]; see, Hearn v Rhay, 68 FRD 574 [ED Wash 1975].) The burden of establishing any right to protection under the privilege “is on the party asserting it; the protection claim must be narrowly construed; and its application must be consistent with the purposes underlying the immunity.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991].) A client also waives the attorney-client privilege by placing the subject matter of counsel’s advice in issue and by making selective disclosure of such advice. (Orco Bank v Proteinas Del Pacifico, 179 AD2d 390 [1st Dept 1992].)
In Jakobleff (supra), a woman terminated her relationship with a law firm that represented her in a marital dissolution action, and hired a new attorney. The new attorney endeavored *610 to rectify what the client viewed as errors on the part of the predecessor, which effort included representing the woman in a lawsuit against it. The former firm commenced a third-party action against the new attorney, alleging that he negligently failed to seek a resettlement of the judgment of divorce, and it sought discovery against him on the ground that he was believed to possess information regarding the extent of the client’s damages. The Court granted the new attorney’s motion for a protective order, finding that there was no waiver of the attorney-client privilege because:
“it simply cannot be said that the plaintiff has placed her privileged communications with her present attorney in issue, or that discovery of such communications is required to enable defendants to assert a defense or to prosecute the third-party claim. To conclude otherwise would render the privilege illusory in all legal malpractice actions: the former attorney could, merely by virtue of asserting a third-party claim for contribution against the present attorney, effectively invade the privilege in every case.” (Jakobleff, 97 AD2d at 835.)
IMO seeks to extend the reasoning in Jakobleff to communications with Farella, where the representation of defendant and Farella is alleged to have been concurrent. However, the evil envisaged by the Appellate Division, Second Department, in Jakobleff is not present here. The California action is ended, and there is no danger that Anderson Kill will invade IMO’s ability to communicate freely with its present attorney. (Cf., TIG Ins. Co. v Yules & Yules, 1999 WL 1029712, 1999 US Dist LEXIS 17607 [SD NY 1999] [no waiver of privilege found in legal malpractice case, even when plaintiff expressly waived it, where subsequent counsel in underlying action also was plaintiffs trial counsel in malpractice action].) IMO relies upon the attorney-client privilege in seeking to prevent inquiry by Anderson Kill into whether the only possible cause of IMO’s injury was the November 1994 joint stipulation. IMO reads too narrowly the scope of inquiry in a legal malpractice case. IMO has the burden of proving that its loss is causally related to the alleged act of malpractice, and Anderson Kill should be permitted disclosure on that question. Moreover, Anderson Kill does not seek disclosure from Farella or IMO’s former general counsel; the information sought is in IMO’s possession; and disclosure is sought only with respect to the subject matter IMO has put in issue.
*611 The situation is analogous to a medical malpractice action where the plaintiff claims that a physician’s error caused her an injury, and she subsequently sought treatment from another physician. It is well settled that a party waives the physician-patient privilege by affirmatively placing her physical or mental condition in issue. (See, e.g., Koump v Smith, 25 NY2d 287 [1969].) The waiver encompasses subsequent treatment of the same injury, even if the alleged malpractice occurred before the plaintiff consulted with other physicians. The waiver in this case is clearer still, because IMO claims that Farella and Anderson Kill concurrently represented it in the California action, the outcome of which is the basis for IMO’s alleged harm.
Finally, IMO relies upon the decision in Fischel & Kahn v Van Straaten Gallery (189 Ill 2d 579, 727 NE2d 240 [2000]) as authority for the proposition that communications with a second law firm that concurrently represented the client are privileged in a legal malpractice case. The law firm in Fischel & Kahn sued its client to recover fees, and the client counter-sued for malpractice. The law firm had advised the client on contract issues in 1986, and continued to advise it until 1992. The firm sought discovery from another law firm that represented the client in a 1990 litigation in which Fischel & Kahn was not retained. The later action resulted in the client sustaining a loss that it alleged resulted from the 1986 contract advice. The law firms’ representation of the client overlapped, albeit in different matters. The Illinois Supreme Court held that the client did not waive the privilege with respect to the litigation firm, and distinguished the facts before it from those in the case of Pappas v Holloway (114 Wash 2d 198, 787 P2d 30 [1990]), where the Supreme Court of Washington State held that a client “could not bring an action against [its former attorney] for malpractice and at the same time protect from disclosure communications made with other lawyers who also participated in the underlying litigation that gave rise to [the client’s] claim.” (Fischel & Kahn, 189 Ill 2d at 588, 727 NE2d at 245.) Fischel & Kahn is distinguishable from the present action because IMO claims not only that the representation by Anderson Kill and Farella overlapped, but that they simultaneously represented IMO in the California action.
The facts in Pappas are more similar to those in the present action. In Pappas, the clients, the Holloways, were defendants in several related actions that were consolidated. (114 Wash 2d at 200-201, 787 P2d at 32-33.) Pappas, an attorney, represented *612 them in one of the actions and in the consolidated action, until he withdrew as counsel a month before trial. Another attorney then took up the case, which resulted in an adverse judgment. Pappas sued to recover his fee and the Holloways countersued for malpractice. Pappas brought third-party claims against the other lawyers and sought discovery from them. The Holloways opposed the disclosure on grounds similar to that claimed by IMO here, arguing that their communications with the other attorneys were privileged and irrelevant to Pappas’ malpractice defense. The court held that the Holloways waived the attorney-client privilege with respect to the other attorneys, stating that “the Holloways cannot counterclaim against Pappas for malpractice and at the same time conceal from him communications having a direct bearing on this issue.” (Id., 114 Wash 2d at 208, 787 P2d at 36.) The court went on to say that “[t]he nature of a malpractice claim necessitates inquiry into the actions taken during the course of the litigation in question.” (Id., 114 Wash 2d at 211, 787 P2d at 38.)
I agree. Therefore, IMO shall produce documents regarding the California action that it has withheld on the grounds of attorney-client privilege. To the extent that the withheld material also are communications regarding IMO’s other lawsuits or communications with IMO’s attorney in the present action, the documents may be redacted. Not only are the lawsuits other than the California action not the subject of this litigation, so the attorney-client privilege is not waived, the material is not relevant. (CPLR 3101 [a].)
B. Work Product Immunity
IMO relies in part upon work product immunity in withholding disclosure. The United States Supreme Court created work product protection in 1947 to advance the public policy favoring broad access to discovery using the newly-enacted liberal discovery tools contained in Federal Rules of Civil Procedure rules 26 through 37. (Hickman v Taylor, 329 US 495, 500-501 [1947].) In Hickman, the Supreme Court stated that it is essential that a lawyer work with a degree of privacy, “free from intrusion by opposing parties and their counsel,” and that if such materials as the attorney’s notes, mental impressions, briefs, etc., “were open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.” (Id. at 510-511.) The Supreme Court stated that a demand for such material, without a showing of necessity, “falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal *613 claims.” (Id. at 510.) In short, work product immunity protects the adversarial process by fostering the attorney’s adequate preparation. Work product is immune from disclosure under CPLR 3101 (c).
IMO relies on work product protection in withholding certain bills from Farella, summaries of the litigation prepared for its board of directors, and drafts of agreements. It also withheld a memorandum (and draft) created by IMO’s general counsel that appears to be his impressions of the California action and related litigation (identified as documents 8a and 9a in the exemption log, respectively).
The drafts of agreements and the memoranda prepared by IMO’s general counsel regarding his impressions are work product; the other material is not. In particular, IMO mischaracterizes Farella’s bills as work product. Although a summary in a legal bill sent to a client generally is subject to the attorney-client privilege, it is not work product because the preparation and submission of a bill is not dependent on legal expertise, education or training, and cannot be “attribute [d] * * * to the unique skills of an attorney.” (Brandman v Cross & Brown Co., 125 Misc 2d 185, 188 [Sup Ct, Kings County 1984].) Similarly, the status reports to IMO’s board of directors about the litigation are factual recitals, and not dependent on legal expertise or created to foster the attorney’s preparation.
The application of the above analysis to each document submitted for in camera review is summarized in the annexed appendix to decision and order. Accordingly, it hereby is ordered that defendant’s motion to compel disclosure is granted.

. International Ins. Co. v Red & White Co., Civ Case No. C 93-0659 (ND Cal).

. IMO also was involved in a lawsuit regarding the LILCO matter with another of its insurers, and in a separate action against International.

. Defendant made this motion to compel disclosure, which was considered together with three other discovery motions (each party made two separate motions to compel), all of which were resolved under prior orders except for the matter addressed herein. In an order dated May 7, 2001, IMO was required to produce documents demanded by the defendant law firm, Anderson Kill, and to produce a log of each document it claims is exempt *608 from production, with an explanation for why it is exempt. According to counsel, the other material sought by both parties has been produced to their satisfaction. IMO did not formally seek a protective order, but this motion is being considered as one for a protective order with respect to the documents on the log.