O’SCANNLAIN, Circuit Judge.
Rarely does a probate matter find its way into federal court. Here we are presented with a will contest involving a member of an Indian tribe in a Department of the Interior probate proceeding where we must decide whether state or federal law of evidence applies.
I
Matilda Covington, a Colville Indian,[1] died on July 13, 1999. On July 9, 1999, shortly before her death, Covington executed a will leaving all her Indian trust allotments to her great-grandson, Brandon Austin Francis, a minor.[2] Covington’s children predeceased her and she left no property to her three living grandchildren. The will listed one of Covington’s grand *919 children, Jolene Francis&emdash;the mother of Brandon Austin Francis&emdash;as the decedent’s personal representative for purposes of administering the estate. Jolene Francis is also listed as a contingent beneficiary for the trust property. Staff attorneys from the Colville Tribal Legal Services (“CTLS”) assisted Covington in drafting her will.
Two of Covington’s grandchildren&emdash;De-bra Palmer and Robert Francis&emdash;contest-ed her will alleging that she lacked testamentary capacity and was subjected; to undue influence. The Department , of the Interior’s (“Interior”) Office of Hearings and Appeals (“OHA”) hears will contests involving Indian trust allotments. See supra n. 2. At the third hearing, testimony by the will scrivener and witnesses cast doubt on Covington’s state of mind. Further, two of Covington’s relatives testified that she was unable to recognize or to speak with them in the days before' she executed the will.
Testimony at the probate hearings revealed that Covington had prepared a handwritten worksheet to aid her attorney in drafting the new will. Debra Palmer and Robert Francis sought a subpoena for all materials related to the preparation of the will, presumably hoping that they would shed light on Covington’s mental state. OHA Administrative Law Judge (“ALJ”) William Hammett oversaw the probate of the will and issued a subpoena duces tecum to James Edmonds&emdash;director of CTLS&emdash;compelling him to produce copies of all documents relating to the preparation of the will and to appear at a hearing. Edmonds refused to turn over the documents, claiming that they were privileged attorney-client communications, confidential, and protected work product. Jolene Francis, the personal representative of Covington’s estate, refused to waive any privilege.
The ALJ rejected Edmonds’s claim of privilege and directed him to produce the relevant materials. Shortly thereafter, Edmonds filed a motion to quash the subpoena in the Eastern District of Washington.[3] The district court granted the motion to quash on the grounds that attorney-client privilege protected the materials.
Interior timely appeals.
II
Interior contends that under the regulations, the ALJ may admit evidence that does not comport with state evidentia-ry rules.[4]
A
As a threshold matter, we must address Interior’s assertion that its interpretation of its own regulations is due deference. Interior is indeed correct that an agency’s interpretation of its own regulations is generally entitled to deference. See, e.g., Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Forsgren, 309 F.3d 1181, 1183 (9th Cir.2002) (“An agency’s interpretation of its own regulations is entitled to deference unless it is plainly erroneous or inconsistent' with the regulation[.]”). Though Interior may be due deference, we are reminded that “Congress has delegated to the administrative *920 official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.” Investment Company Institute v. Camp, 401 U.S. 617, 628, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971). In Bowen v. Georgetown University Hospital, 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), however, the Supreme Court refused to extend Chevron deference when “the agency itself has articulated no position on the question.” The Court explained that “[djeference to what appears to be nothing more than an agency’s convenient litigating position would be entirely inappropriate.” Id. Despite these admonitions, Auer explained that an agency’s litigating position may be entitled to deference if it reflects the agency’s “fair and considered judgment on the matter in question” and is not a “ ‘post hoc rationalization.’” 519 U.S. at 462, 117 S.Ct. 905 (quoting Bowen, 488 U.S. at 212, 109 S.Ct. 468). If Interior’s position meets these requirements, and is not plainly erroneous or inconsistent with the regulations, we will defer to it.[5]
B
Interior has published regulations regarding Indian trust probate proceedings pursuant to 5 U.S.C. § 301, which authorizes the head of any executive department to prescribe regulations to conduct the business of the department.
The relevant OHA regulation on form and admissibility of evidence states:
(a) Interested parties may offer at a formal hearing such relevant evidence as they deem appropriate under the generally accepted rules of evidence of the State in which the evidence is taken, subject to the administrative law judge’s or Indian probate judge’s supervision as to the extent and manner of presentation of such evidence.
(b) The administrative law judge or Indian probate judge may admit letters or copies thereof, affidavits,' or other evidence- not ordinarily admissible under the generally accepted rules of evidence. The weight to be attached to evidence presented in any particular form is within the discretion of the administrative law judge or Indian probate judge, taking into consideration all the circumstances of the particular case.
(c) Stipulations of fact and stipulations of testimony that would be given by witnesses were such witnesses present, agreed upon by the interested parties, may be used as evidence at the hearing.
(d) The administrative law judge or Indian probate judge may in any case require evidence in addition to that offered by the interested parties.
43 C.F.R. § 4.232.
Another OHA regulation limits production of privileged materials:
(a) An interested party may make a written demand to produce documents
*921 for inspection and copying or photographing. This demand:
... (4) May demand any documents, papers, records, letters, photographs, or other tangible things that are:
(i) Relevant to the issues;
(ii) In the other party’s or custodian’s possession, custody, or control; and
(iii) Not privileged. ...
(c) On his or her own motion, the administrative law judge or Indian probate judge may issue an order to any interested party or custodian of records for the production of material or information that is relevant to the issues and not privileged. ...
43 C.F.R. § 4.220 (emphasis added).
While under § 4.220, the ALJ lacks authority to subpoena privileged materials, the regulation does not specify whether federal or state privilege law applies. The parties agree that if federal evidentiary law applies to these proceedings, § 4.220 would not bar the admission of Covington’s notes.[6] Obviously, the first question is whether § 4.232 adopts federal or state evidentiary rules. Second, we must determine whether the relevant source has incorporated the testamentary exception to the attorney-client privilege.
C
Does § 4.232 adopt state or federal law? CTLS contends that subsection (a) applies the evidentiary rules of the state in which the evidence is introduced. Interior, on the other hand, contends that subsection (a) only determines what evidence the parties may offer as a matter of right, and that subsections (b) and (d) allow the ALJ to admit evidence on the basis of federal common law.
1
Subsection (a) is the only provision of either regulation that mentions state or federal law, noting that the parties “may offer ... relevant evidence as they deem appropriate under the generally accepted rules of evidence of the State in which the evidence is taken.” 43 C.F.R. § 4.232(a). The plain text of the regulation supports CTLS’s interpretation: the evidence the parties may offer is determined by state law, not federal law. As to substantive evidentiary issues surrounding proffered evidence — such as whether Covington’s communications with her attorney are privileged (or, conversely whether they may be offered as evidence) — subsection (a) identifies state law as the relevant authority.
2
But the question remains where subsection (a) fits as part of the overall regulatory scheme. Campesinos Unidos v. U.S. Dep’t of Labor, 803 F.2d 1063, 1069 (9th Cir.1986) (“Our task is to interpret the regulation as a whole, in light of the overall statutory and regulatory scheme, and not to give force to one phrase in isolation.”). CTLS’s interpretation also fits with the structure of the whole regulation. If subsection (a) adopts state law as the *922 relevant evidentiary law for substantive questions, then subsection (b) — as we discuss further below — frees the ALJ from the strictures of “generally accepted rules of evidence” in order to allow evidence of different forms and to retain a relaxed procedure. Though we agree with Interi- or that subsection (a) does not necessarily set a limit as to what evidence may come in — subsections (b) and (d) may expand this universe — subsection (a) clearly sets the baseline.
The text of § 4.232 is plain; we need not defer to the agency’s interpretation of subsection (a). Indeed, Interior’s interpretation is not even supported by its own Interior Board of Indian Appeals’ (“IBIA”) case law. Specifically, Estate of Charles Hall, Sr., 8 IBIA 53, 62 (Mar. 28, 1980), concluded that § 4.232 “adopts the rules of evidence of the state where the hearings are held.” Similarly, in Estate of Elizabeth Frank Green, 3 IBIA 110, 119 (Sept. 19, 1974), the IBIA concluded that § 4.232(a) provides the rules for “submitting and receiving evidence in Indian probate proceedings.” We think it clear from these cases that the IBIA decisional law construes subsection (a), and § 4.232 generally, as having selected state evidentiary law as the relevant law for the proceedings.
D
Interior contends that subsections (b) and (d) give the ALJ broad authority to admit evidence that would not be allowed under state rules, but would be allowed under federal rules. CTLS contends that the ALJ remains bound by state law except under the narrow exceptions provided for in the other subsections.
1
Subsection (b) states that the ALJ “may admit letters or copies thereof, affidavits, or other evidence not ordinarily admissible under the generally accepted rules of evidence. ...” § 4.232(b). Interior argues that subsection (b) allows the ALJ to admit evidence in accordance with federal privilege law, meaning that § 4.220 would no longer prohibit the admission of the materials.
The term “other evidence not ordinarily admissible” is a general term following specific examples, so we must interpret it with reference to the preceding list according to the ejusdem generis canon of construction. See, e.g., Circuit City Stores v. Adams, 532 U.S. 105, 114-115, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (“ ‘[Wjhere general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.’ ”) (quoting 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (1991)). Under this reading, “or other evidence ...” must refer to other evidence similar to “letters or copies thereof’ and “affidavits.” Given the preceding terms, the catch-all provision is limited to form and related issues of presentation (e.g., whether the evidence is properly authenticated, whether it is presented as hearsay, etc.), rather than questions of substance (e.g., whether privilege extends).[7]
*923 The second sentence of subsection (b), which Interior does not explain, reinforces this conclusion: “The weight to be attached to evidence presented in any particular form, is within the discretion of the administrative law judge” (emphasis added). That is, the ALJ may admit evidence in a variety of forms, but because such evidence may be suspect, the ALJ is free to discount its weight. Were Interior correct that subsection (b) broadly authorizes the ALJ to admit any evidence he so chooses, the reference to “form” in the second sentence would be inappropriate.
Interior’s interpretation of subsection (b) — that it allows the ALJ broadly to “admit evidence not ordinarily admissible” — excises the prefatory examples and ignores the second sentence of the subsection. We decline to adopt such interpretation. Rather, we read subsection (b) as a whole; as such, it allows the ALJ to ignore technical evidentiary requirements and to admit evidence in various forms or types, but the ALJ may not adopt different standards for substantive evidentiary questions, such as whether communications are privileged as a matter of law.
Such interpretation also fits with the prior IBIA case law. For example, hearsay evidence may not be admissible under state evidentiary rules, but the ALJ can still admit such evidence under subsection (b). See, e.g., Estate of Harold Humpy, 5 IBIA 132, 136 (June 18, 1976) (approving the ALJ’s use of § 4.232(b) to admit hearsay testimony that would not be admissible under state law); Estate of Alexander Joseph Williams, 6 IBIA 132, 135 (Aug. 2, 1977) (approving the use of testimony by affidavit where a witness’s health prevented a live appearance, even though state evidentiary law would not allow testimony in this form); Estate of Guo-La a/k/a Thomas Jones, 7 IBIA 181, 186 (Aug. 28, 1979) (hearsay rule not applicable to administrative proceedings). For example, in Estate of Alexander Joseph Williams, a witness was too ill to travel and to present testimony. The IBIA concluded that it was acceptable for the ALJ to consider the witness’s testimony by affidavit, though applicable state rules would not have allowed the testimony to be delivered in that form. 6 IBIA at 135. As the IBIA explained, “43 CFR 4.232 adopts the rules of evidence of the state where the hearings are held, but permits a relaxed procedure.” Estate of Charles Hall, 8 IBIA at 62 (emphasis added). See also Estate of Larry Michael Oskolkoff, 37 IBIA 291, 299 (June 24, 2002) (noting that subsection (b) gives the ALJ “some discretion in determining what kinds of evidence will be considered”). These cases go to the form of evidence, and none would allow the ALJ to admit evidence whose substance — rather than its manner of presentation — would be prohibited by state law.
In support of its interpretation of subsection (b), Interior argues that “[i]t is a well established principle that federal evi-dentiary rules govern proceedings in federal court where federal law provides the rule of decision.” Federal Rule of Evidence 501, however, states that federal common law will apply unless “otherwise ... provided.” Fed.R.Evid. 501. Here the regulations specifically adopt state evi-dentiary rules. Further, given that the IBIA has previously interpreted § 4.232 as adopting state evidentiary rules, the litigating position proffered by Interior now — advocating that federal common law applies — is not entitled to any deference.
In sum, subsection (b) expresses the relatively uncontroversial proposition that administrative proceedings need not cleave to strict state evidentiary rules. See, e.g., Opp Cotton Mills v. Adm’r of Wage and Hour Div. of Dep’t of Labor, 312 U.S. 126, 155, 61 S.Ct. 524, 85 L.Ed. 624 (1941) (noting that technical evidentiary rules, applicable in jury trials, “do not apply to *924 proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed”)- This interpretation also fits within the regulatory scheme: subsection (b) gives the ALJ somewhat broader authority to admit evidence, but does not jettison the selection of state substantive law evinced in subsection (a). Subsection (b) does not go further to adopt federal common law or give the ALJ broad authority. Further, while there are many IBIA decisions relying on subsection (b) to admit evidence whose form or presentation does not comport with state law, Interior cannot point to any IBIA decision that extends to the ALJ authority to circumvent evidentiary rules on questions of substance.
2
Interior also notes that “[t]he Department has consistently held that the execution and interpretation of a will disposing of trust or restricted property are questions of Federal, not state, law.” Estate of Florence Night Chase, 38 IBIA 188, 192 (Nov. 5, 2002) (citations omitted); see also Estate of Elizabeth Frank Green, 3 IBIA 110, 120 (Sept. 19, 1974) (“The Department has long adhered to the rule that state laws have no application in Indian trust probate proceedings involving wills.”). However, this line of cases stands only for the proposition that federal law supplies the standards for determining valid execution and proper interpretation of wills. These cases do not support Interi- or’s position that federal evidentiary law applies to questions of privilege as well. Indeed, the same cases which note the role of federal law also explain that state evi-dentiary law applies. See, e.g., Green, 3 IBIA at 119 (noting that § 4.232(a) provides for “submitting and receiving evidence in Indian probate proceedings”). Even if the IBIA decisions supported Interior’s position, Interior’s proffered interpretation is not supported by the text of the regulation, which does not distinguish between proceedings involving wills and other proceedings. Such interpretation would not be entitled to deference. Auer, 519 U.S. at 461,117 S.Ct. 905.
3
Finally, Interior argues that subsection (d) gives the ALJ broad authority to “require evidence in addition to that offered by the parties.” Interior contends that subsection (d) allows the ALJ to admit any evidence admissible under federal law.
First, we note that nowhere does subsection (d) explicitly adopt federal law. In contrast, subsection (a) explicitly adopts state law as the baseline for admissibility. Further, were we to adopt Interior’s interpretation of subsection (d), that provision would swallow subsection (b). That is, if subsection (d) broadly authorizes the ALJ to “require” any evidence admissible under federal law, then a priori the ALJ can admit evidence that is otherwise inadmissible under state law. Such result should be avoided: “When interpreting a regulation, we must avoid an interpretation that would render another regulation superfluous.” United States v. Alisal Water Corp., 427 F.3d 597, 606 (9th Cir.2005) (citation omitted). Subsection (b) carefully allows the ALJ authority to compel materials of a different form or presentation, but does not allow the abrogation of substantive state evidentiary law. Interior’s reading of subsection (d) undermines this balance by reading subsection (d) in isolation: The ALJ “may in any case require evidence in addition to that offered by the interested parties.” However, this reading impermis-sibly “give[s] force to one phrase in isolation,” rather than considering the entire statutory scheme. Campesinos Unidos, 803 F.2d at 1069.
The better reading of subsection (d), we conclude, is that it grants the ALJ authori *925 ty to “require” additional otherwise admissible evidence beyond that presented to him. As Interior has argued, the ALJ sits in OHA proceedings as a delegate of the Secretary. In this role&emdash;as compared to that of a typical trial judge&emdash;the ALJ can compel the testimony of additional witnesses and require additional documentation beyond that proffered by the parties. But this does not mean that the ALJ can circumvent the scheme set out in subsections (a) and (b). Again, no IBIA case law supports Interior’s interpretation, which, in any event, is inconsistent with the regulatory text because it would render subsection (b) vestigial.
Ill
If the regulation requires the ALJ to follow state evidentiary laws, Interior argues that Washington state law would recognize the testamentary exception to the attorney-client privilege.[8] In the alternative, Interior argues that the question is appropriate for certification to the Washington Supreme Court. CTLS argues that the testamentary exception does not exist under Washington law.
While some states have statutorily defined the exceptions to the attorney-client privilege,[9] the Washington Supreme Court has repeatedly identified and endorsed judge-made exceptions to the privilege. See, e.g., Pappas v. Holloway, 114 Wash.2d 198, 787 P.2d 30, 34 (1990) (advice not privileged during litigation between attorney and client); State v. Metcalf, 14 Wash.App. 232, 540 P.2d 459, 461 (1975) (advice sought in furtherance of crime or fraud not privileged); see also Robert H. Aronson, The Law of Evidence in Washington § 501.03[2][h][i]-[vi] (2004) (describing six recognized exceptions to the attorney-client privilege in Washington).
The parties agree that no Washington case has (yet) adopted the testamentary exception, though it has been recognized in other courts for over 150 years. Edward J. Imwinkelried, The New Wigmore: A Treatise on Evidence § 6.13.2 (2002) (noting that English courts first recognized the testamentary exception in Russell v. Jackson, 68 Eng. Rep. 558 (V.C.1851)). The parties point to two cases, Points v. Nier, 91 Wash. 20, 157 P. 44 (1916), and Cummings v. Sherman, 16 Wash.2d 88, 132 P.2d 998 (1943), which both discuss the attorney-client privilege after the death of a client. While these cases are material to determining whether the Washington Supreme Court would adopt a testamentary exception, that is not the inquiry required under § 4.232(a). Rather, the regulations only require us to determine whether the testamentary exception to the attorney-client privilege is “generally accepted.” The parties have not provided a single Washington case or statute recognizing the testamentary exception; we therefore conclude that the testamentary exception is not “generally accepted” in Washington, whatever its merits or the likelihood that it would be adopted in the future.[10]
*926 In contrast, it is clear that under Washington law, the attorney-client privilege is “generally accepted.” See Wash. Rev. Code § 5.60.060(2)(a). Pursuant to the standard rules of attorney-client privilege, resort to Covington’s attorney’s notes is not “appropriate under the generally accepted rules of evidence of’ Washington. Because no “generally accepted” testamentary exception applies, Covington’s notes are inadmissible.
AFFIRMED.

. In this opinion, we use the term ''Indian.” Though the term ''Native American” is frequently preferred, "the statutes and opinions we examine use the term Indian, which was the appropriate word not so long ago.” Dawavendewa v. Salt River Project Agric. Improvement & Power Dist., 154 F.3d 1117, 1118 n. 1 (9th Cir.1998).

. A trust allotment is "a parcel of land owned by the United States in trust for an Indian.” Cohen's Handbook of Federal Indian Law § 16.03[1], p. 1039 (Nell Jessup Newton et al. eds., 2005) ("Federal Indian Law ”). See also United States ex rel. Moronga Band of Mission Indians v. Rose, 34 F.3d 901, 906 n. 2 (9th Cir.1994). Generally, "upon the death of an Indian allotment owner, the decedent's interest ... passes to his or her Indian heirs or devisees.” Federal Indian Law § 16.03[4][c], p. 1052. However, "with secretarial approval, Indian allotment owners may relinquish allotted land to their close relatives in trust, so long as the recipient is an Indian qualified to own restricted property.” Id. Thus, the Department of the Interior determines the disposition of trust properties when the Indian dies. 25 U.S.C. §§ 372, 373. See also William C. Canby, Jr., American Indian Law 50 (4th ed.2004) (describing Indian trust lands and Interior’s role).

. 43 C.F.R. § 4.230(b) designates the district court as the proper forum for the enforcement of a subpoena issued by an OHA ALJ.

. A district court's decision to quash an administrative subpoena is reviewed de novo. NLRB v. Bakersfield Californian, 128 F.3d 1339, 1341 (9th Cir.1997); Reich v. Montana Sulphur & Chem. Co., 32 F.3d 440, 442 (9th Cir.1994).

. CTLS argues that Interior’s interpretations are not entitled to deference because the Interior Department functions as a trustee for Indians. See Cobell v. Norton, 240 F.3d 1081, 1099 (D.C.Cir.2001) (noting that "the Secretary cannot escape his role as trustee by donning the mantle of administrator to claim that courts must defer to his expertise and delegated authority" (internal quotations omitted)). However, even if a duty to deal fairly with Indians applies, it is not clear who benefits. CTLS argues that the duty favors its interpretation, because it protects the Indian-testator’s confidential communications. Interior, however, contends that it needs broad authority to admit evidence in order to dispose of trust lands effectively and in accordance with the Indian-testator’s wishes. Thus, any duty to deal fairly would just as easily favor Interi- or's interpretation as CTLS’s. With both parties claiming that their approach benefits Indians — and both parties having plausible claims to such — we cannot say that a duty to deal fairly would cut one way or another.

. If the testamentary exception to the attorney-client privilege applies, the materials would be both admissible and not privileged. See, e.g., Glover v. Patten, 165 U.S. 394, 406, 17 S.Ct. 411, 41 L.Ed. 760 (1897) (noting, in a suit between devisees under a will, that "statements made by the deceased to counsel respecting the execution of the will, or other similar documents, are not privileged ” (emphasis added)); 8 Wigmore on Evidence § 2292, p. 555 (J. McNaughten ed., 1961) (noting, with respect to Uniform Rule of Evidence 26, the privilege “shall not extend ... to a communication relevant to an issue between” parties claiming through a deceased client (emphasis added)). Therefore, if the testamentary exception to the attorney-client privilege applies, the limitation in 43 C.F.R. § 4.220 would not bar the subpoena of the documents.

. CTLS also argues that if subsection (b) is read any more broadly — for example, so that it allows the ALJ to admit any evidence — then it would swallow subsection (a). However, this ignores another distinction between the two provisions. Subsection (a) deals with evidence the parties may offer, while subsection (b) deals with evidence that the ALJ may accept. Thus, even if subsection (b) is read broadly, subsection (a) still has a different, logical function.

. We review de novo the district court’s interpretation of state law. Salve Regina College v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); General Motors Corp. v. Doupnik, 1 F.3d 862, 864 (9th Cir.1993).

. See, e.g., Cal. Evid.Code § 957 ("There is no privilege under this article as to a communication relevant to an issue between parties all of whom claim through a deceased client.”); Hawaii Rule of Evidence 503(c)(3) (same).

.Certification pursuant to Wash. Rev.Code § 2.60.030 would also be inappropriate. Indeed, certification would implicitly concede that there is no "generally accepted” law. Once we have made that conclusion our analysis is at an end, and the evidence is inadmissible. Furthermore, the issue is what the ALJ should have done when faced with this eviden-tiary issue. An ALJ in an OHA proceeding lacks the authority to certify questions under Washington law. See Wash. Rev.Code *926 § 2.60.010. Thus, the ALJ was bound by the then-extant generally-accepted state law.